## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JAMES JULIAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) Case No. _____ |
| **SENIOR LIFE INSURANCE COMPANY,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff James Julian files this Complaint against Senior Life Insurance Company (herein "Senior Life") for violations of the federal Telephone Consumer Protection Act ("TCPA") and its implementing regulations, and the Kansas Consumer Protection Act ("KCPA"), and alleges as follows:

### INTRODUCTION

1. The TCPA was enacted to protect consumers' privacy interests by prohibiting unwanted, repetitive, and invasive telephone solicitations. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

1

2

2. From September 22, 2023, to November 30, 2024, Plaintiff received a barrage of illegal telemarketing calls made by telemarketers soliciting Final Expense insurance services on behalf of Senior Life at the authorization and direction of Senior Life.

3. Plaintiff seeks redress under the TCPA and KCPA, demanding that the calls stop and a statutory damages award of $500 per call, trebled to $1,500 per call upon a showing that Defendants' violations were willful or knowing, and an award of damages in a sum set by the court of up to $10,000 for each violation of the KCPA.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the subject matter of this complaint under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

5. This Court has specific personal jurisdiction over Senior Life because Senior Life purposefully availed itself to the State of Kansas and this District, and there is a sufficient relationship between Senior Life's purposeful contacts with Kansas and the litigation:

   a) Senior Life targets Kansas when marketing their services and regularly conducts business in this District, including via telephone solicitations.

   b) These calls to Kansas injured Plaintiff in Kansas, creating a causal link among Senior Life, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct*., 141 S. Ct. 1017 (2021).

6. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

7. Plaintiff is a natural person domiciled in Kansas who received the incessant and intrusive calls made on behalf of Senior Life to market their Final Expense insurance services.

8. Senior Life is a limited liability company organized and existing under the laws of Georgia, and registered as a foreign limited liability company in the state of Kansas and may be served via its registered agent Heath Bassett, 1 Senior Life Lane, Thomasville, GA 31792.

## FACTUAL ALLEGATIONS

9. Plaintiff successfully registered his personal cellphone number ending in -1687 on the National Do-Not-Call Registry ("DNC") on April 25, 2006.

10. Plaintiff's phone ending in -1687 is a personal cellphone line.

11. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

12. Senior Life is a "person" as the term is defined by 47 U.S.C. § 153(39).

13. As part of their marketing, Senior Life contracted with and hired telemarketing companies ("John Does") to tele-solicit consumers for their services.

14. Senior Life authorized John Does to act as agents of Senior Life.

15. Senior Life has been alerted to the TCPA violations via multiple Federal lawsuits and still has not taken any actions to curtail their TCPA-violating behavior.

16. Senior Life has been the subject of numerous complaints from consumers for making telemarketing calls identical to those made to Plaintiff.

17. In those consumer complaints, consumers have objected to Senior Life's telemarketing calls, did not consent to them, and received them despite being listed on the National Do-Not-Call Registry.

18. Plaintiff received over one hundred fifty (150) phone calls to his personal cell phone ("the calls") from May 14, 2024 to November 30, 2024, from John Does calling on behalf of Senior Life soliciting their Final Expense insurance services. *See Exhibit A*.

19. Plaintiff has never had any relationship with Senior Life and has never been a customer of Senior Life.

20. Plaintiff never gave Senior Life his prior express written consent to receive any of the alleged calls.

21. Other than to determine the identity of the caller, Plaintiff never requested information regarding services from Senior Life.

22. Each alleged call started with the same telemarketing script when Plaintiff answered soliciting final expense insurance services.

23. The alleged calls were clearly generated from an automated dialing system (ATDS) because (a) there was an audible transition tone after Plaintiff answered the call and spoke and (b) there was a pause of silence or dead air on each call prior to the caller speaking.

24. On every alleged call, the incoming caller identification was misidentified or "spoofed" to conceal the identity of the caller.

25. On multiple alleged calls, the caller would initially provide a false company name on whose behalf the call was made.

26. Plaintiff did not request information regarding Senior Life's services and was not interested.

27. On three separate phone calls, Plaintiff was connected to an agent or employee of Senior Life.

28. Plaintiff received a call on August 6, 2024 from caller ID (629) 600-3321 from an

agent soliciting insurance services.

29. Plaintiff was connected to Aaron Cardwell, who provided his license number 244233 and identified himself as a certified agent for Senior Life Insurance Company, located in Georgia.

30. On the August 6, 2024 phone call, Aaron Cardwell connected Plaintiff to an employee of Senior Life with the last name Williams in its corporate headquarters. During that phone call Plaintiff informed Senior Life that he was attempting to identify the source of the multiple unsolicited phone calls he was receiving and that the calls violated the TCPA.

31. On August 30, 2024, Plaintiff received a phone call from Jordan Shamooni, an insurance agent soliciting final expense insurance policies.

32. Mr. Shamooni provided his license number 20744678, his business telephone number of 586-488-9309, and his personal phone number (316) 320-4003 for a return phone call.

33. Plaintiff located Mr. Shamooni's name and license number on the Kansas insurance database which listed Mr. Shamooni as having an appointment from Senior Life as an insurance producer. *See Exhibit B*.

34. On September 4, 2024 Plaintiff received a phone call from Senior Life agent Aaron Caldwell which displayed as caller ID (514) 334-1421.

35. During this second phone call with Aaron Caldwell, Mr. Caldwell joined Senior Life headquarters agent support department on a 3-way call and the two spoke with Frank Funderburk, Director of Quality Assurance with Senior Life.

36. Plaintiff informed Mr. Funderburk that he had been receiving unsolicited calls from Senior Life and wanted the calls to stop.

37. Despite Plaintiff's request to be removed from the calling list, Plaintiff was

bombarded and harassed with multiple calls from John Does calling on behalf of Senior Life and soliciting its Final Expense insurance services.

38. Plaintiff answered each call contained in Exhibit A and saved each incoming phone number as a unique contact in his cellphone.

39. On each call listed in Exhibit A, Plaintiff answered and heard the same telemarketing script soliciting Senior Life's Final Expense services.

40. In an effort to stop the unwanted, unsolicited, and harassing phone calls, Plaintiff sought and recorded information to identify the company responsible for the harassing phone calls.

41. On the first alleged call and on each subsequent alleged call, the caller followed the same telemarketing sales script and asked for Plaintiff's name, date of birth, address, health ailments and whether the call recipient has any additional insurance or benefits on top of their standard Final Expense coverage.

42. On August 30, 2024, Plaintiff's counsel sent a letter to Senior Life demanding the calls cease (Exhibit C).

43. Senior Life ignored all of Plaintiff's do not call requests.

44. At minimum, each call Senior Life made to Plaintiff after Plaintiff requested they stop was made knowingly and willfully.

45. Plaintiff never gave his prior express written consent to receive any calls from or on behalf of Senior Life.

46. None of the alleged calls were made to Plaintiff for emergency purposes.

47. Each alleged call was placed without the maintenance of an internal do-not-call policy.

48. On information and belief, Senior Life did not have a written do-not-call policy while John Does were calling Plaintiff.

49. On information and belief, Senior Life did not train John Does on the existence and use of any do-not-call list.

50. Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded.

51. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

52. John Does placement of multiple calls on behalf of Senior Life within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC Registry since April 25, 2006, violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
### TO PLAINTIFF AS A RESULT OF THE CALLS

53. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing telemarketing calls.

54. The calls harmed Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

55. Plaintiff has been annoyed, harassed, and irritated by automated telemarketing calls placed to him from John Does on behalf of Senior Life.

56. The calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to Plaintiff.

### VICARIOUS LIABILITY OF DEFENDANT SENIOR LIFE FOR THE ACTIONS OF JOHN DOES

57. An agency relationship was created when Senior Life hired John Does who acted as Senior Life's agent when they initiated automated telemarketing calls with prerecorded voice messages to Plaintiff's cell phone.

58. By hiring a company to make calls on its behalf, Senior Life "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

59. Senior Life is liable for John Does conduct because Senior Life controls the manner and means of John Does telemarketing by:

    a) Acquiescing to John Does business mode of using a call center;

    b) Instructing John Does on the geographic regions they can make calls into;

    c) Providing qualifications for potential clients;

    d) Allowing John Does to engage clients for Senior Life's services; and

    e) Instructing John Does to bring a Senior Life representative on the line with potential clients to complete a transaction for Senior Life's services.

60. Senior Life exercised control over John Does by providing geographic location requirements, and specific business requirements of the solicited consumers and prescribing during what hours to make the phone calls.

61. Senior Life's integration of automated telemarketing calls into its sales process was so seamless that it appeared to an outside party like Plaintiff that the John Does were the telemarketing department of Senior Life.

62. Senior Life exercised control and authority over John Does by prescribing the manner in which they may solicit consumers.

63. Senior Life donned John Does with apparent authority to make the calls at issue. Thus, John Does pitched Senior Life's services in the abstract.

64. Senior Life is legally responsible for ensuring that the company that made the calls complied with the TCPA even if Senior Life did not make the calls.

65. Senior Life appointed John Does as agents and gave them actual authority to market Senior Life's services.

66. Senior Life is vicariously liable under the theories of actual authority and ratification, as any other result would impair the purpose of the TCPA.

67. Senior Life is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a client.

## RATIFICATION

68. Senior Life has known for over one year that their telemarketers have been making phone calls that violate the TCPA.

69. Senior Life has ratified the telemarketing campaign by continuing to allow phone calls with prerecorded voice messages. The calls continue to be made daily to thousands, if not millions, of consumers.

70. Through information and belief Senior Life is responsible for the marketing campaign by John Does and Senior Life either initiated the calling campaign or allowed it to continue because it benefits Senior Life financially.

71. Senior Life is aware of the robocalling campaign and has not taken steps to end the robocalling campaign.

72. John Does continue to make TCPA violating calls on behalf of Senior Life and solicit Senior Life's services for the economic benefit of Senior Life.

73. Senior Life is accepting these benefits with its eyes wide open as to the TCPA-violative nature of the phone calls.

74. Senior Life has ratified the automated telemarketing campaign by failing to stop the calls and continuing to accept the benefits of the illegal telemarketing calls.

75. Senior Life as a principal is liable for the actions of John Does because it received or retained the benefits it generated from the calls.

76. Senior Life knew for months that the subject calls violated the TCPA and yet they continued to allow the activity to continue to reap the financial reward of the calls.

## CAUSES OF ACTION

### COUNT I
### DNC Violations
### Violation of the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)

77. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

78. The TCPA prohibits telephone solicitation of residential telephone subscribers whose numbers are registered on the National Do-Not-Call Registry, 47 U.S.C. § 227(c)(5).

79. Even though Plaintiff's number has been registered on the National DNC Registry since April 25, 2006, which was more than thirty-one (31) days prior to the alleged calls, Senior Life and/or their telemarketers or agents made at least one hundred fifty (150) unsolicited telephone solicitation calls to Plaintiff's residential telephone line, without Plaintiff's consent, and thereby violated 47 U.S.C § 227(c) and 47 C.F.R. § 64.1200(c) (the "DNC Violations").

80. Plaintiff suffered the following injuries from each violation: invasion of privacy; intrusion on Plaintiff's right of seclusion; occupation of Plaintiff's telephone line by unwelcome calls, rendering the phone unavailable for legitimate calls; inconvenience; loss of usefulness of Plaintiff's phone; unnecessary expenditure of Plaintiff's phone's battery power; degradation of the battery; and trespass to Plaintiff's chattel, namely his cellular telephone.

81. Under § 227(c)(5), Plaintiff is entitled to receive up to $500 in damages for each violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c). Because the violations were knowing and willful, the Court may award up to $1,500 per violation.

## COUNT II
### Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Artificial or Prerecorded Telemarketing Without Prior Express Written Consent

82. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

83. Defendant and/or its telemarketers or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), over one hundred fifty (150) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an artificial or prerecorded message without prior express written consent.

84. Plaintiff was statutorily damaged at least one hundred fifty (150) times under 47 U.S.C. § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

85. Plaintiff was further statutorily damaged because Defendant and/or its telemarketers or agents willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each willful and/or knowing violation.

86. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and/or its telemarketers or agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an artificial or prerecorded voice message without prior express written consent.

87. Accordingly, Plaintiff seeks an order under Section 227(c)(5) awarding $1,500 for each violation.

## COUNT III
### Telephone Consumer Protection Act (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff)

88. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

89. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff despite their numbers being on the National Do Not Call Registry.

90. The Defendant's violations were negligent, willful, or knowing.

91. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff presumptively is entitled to an award of between $500 and $1,500 in damages for each and every call made.

92. Plaintiff is also entitled to an award of attorneys' fees and costs.

93. Plaintiff is also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to Plaintiff's telephone numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## COUNT IV

**Violation of the Kansas Consumer Protection Act (K.S.A. 50-636; 50-670 – 50-670a.)**

94. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

95. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the KCPA, K.S.A. 50-636 et seq.; K.S.A. 50-670 and 50-670a. by making telemarketing calls to the Plaintiff despite the phone number being on the National Do Not Call Registry.

96. Defendant's violation of the KCPA hereunder constitutes an unconscionable act or practice under the KCPA entitling Plaintiff to damages in a sum set by the court of up to $10,000 for each violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Leave to amend this Complaint to name additional John Does as they are identified and to conform to the evidence presented at trial.

B. A declaration that actions complained of herein by Senior Life violate the TCPA.

C. A declaration that actions complained of herein by Senior Life violate the KCPA.

D. An injunction enjoining Senior Life and/or their telemarketers or agents from engaging in the unlawful conduct set forth herein.

E. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself $500.00 in statutory damages for each and every call that violated the TCPA.

F.      As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA.

G.      As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff seeks for himself $500.00 in statutory damages for each and every call that violated the TCPA.

H.      As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(c), Plaintiff seeks for himself treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA.

I.      As a result of Defendant's violations of the K.S.A. 50-623 et seq., Plaintiff seeks for himself damages in a sum set by the court of up to $10,000 for each violation.

J.      An award of attorneys' fees and costs to counsel for Plaintiff.

K.      Such further relief as the Court deems necessary, just, and proper.

Dated April 25, 2025                    Respectfully submitted,

/s/ *Paul K. Thoma*
Paul K. Thoma
KS # 16145
Attorney for Plaintiff James Julian
9216 Bond
Overland Park, KS 66214
Telephone: (913) 488-5666
Fax: (913) 492-7801
Email: pkerry11@gmail.com
*Counsel for Plaintiff*

Stewart R. Pollock, Esq. (VSB No. 92466)
Rebecca A. Roberts, Esq. (VSB No. 99524)
MORAN REEVES & CONN PC
1211 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250

Facsimile: (804) 421-6251
spollock@moranreevesconn.com
rroberts@moranreevesconn.com
*Counsel for Plaintiff*
*Pro Hac Vice Forthcoming*

**Demand For Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.


Dated: April 25, 2025            /s/ *Paul K. Thoma*
                                 Paul K. Thoma
                                 KS # 16145
                                 Attorney for Plaintiff James Julian
                                 9216 Bond
                                 Overland Park, KS 66214
                                 Telephone: (913) 488-5666
                                 Fax: (913) 492-7801
                                 Email: pkerry11@gmail.com
                                 *Counsel for Plaintiff*

                                 Stewart R. Pollock, Esq. (VSB No. 92466)
                                 Rebecca A. Roberts, Esq. (VSB No. 99524)
                                 MORAN REEVES & CONN PC
                                 1211 East Cary Street
                                 Richmond, Virginia 23219
                                 Telephone: (804) 421-6250
                                 Facsimile: (804) 421-6251
                                 spollock@moranreevesconn.com
                                 rroberts@moranreevesconn.com
                                 *Counsel for Plaintiff*
                                 *Pro Hac Vice Forthcoming*